UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE & CASUALTY COMPANY,

                        Plaintiffs,

    -against-

EASTERN MEDICAL, P.C., MEDICAL
ACUPUNCTURE SERVICES, P.C.,
ROBERT HARD, M.D., ELVIN RUIZ, M.D.,
JOSEPH MORRIS a/k/a JOSEPH CAROLLO,
BAYSIDE MANAGEMENT, INC.,
MANAGEMENT SERVICE ORGANIZATION,
INC., LAI FAN XUE, CHENG HE SU, LI LI
ZHANG, QUN LIU, RUN SHENG XIE, and
YAN YAN YU,

                        Defendants.
-------------------------------------------------------X

MEMORANDUM
AND ORDER

05 CV 3804 (ENV) (RML)

LEVY, United States Magistrate Judge:

           Defendants Eastern Medical, P.C. ("Eastern"), Medical Acupuncture Services,

P.C. ("MAS"), Dr. Robert Hard, Dr. Elvin Ruiz, Lai Fan Xue, Cheng He Su, Li Li Zhang, Qun

Liu, Run Sheng Xie, and Yan Yan Yu (collectively, "defendants") move pursuant to Federal

Rule of Civil Procedure 37 to compel plaintiffs State Farm Mutual Automobile Insurance

Company and State Farm Fire & Casualty Company ("plaintiffs") to provide the special

investigation unit ("SIU") file compiled by plaintiffs on each defendant.[1]  For the reasons given

below, defendants' motion is granted in part and denied in part.

---

[1] This discovery issue comprised one part of a larger motion to compel discovery submitted by defendants on October 31, 2007.  Following proceedings before the court on February 29, 2008, all of the discovery disputes were resolved bar one, which this memorandum and order will now address.

**BACKGROUND**

On August 10, 2005, plaintiffs filed suit in this Court, alleging civil Racketeering Influenced and Corrupt Organizations Act ("RICO") violations under 18 U.S.C. § 1962 and common law fraud claims. (<u>See</u> Complaint, dated Aug. 10, 2005, ¶¶ 50-53, 57-59, 61-65, 67-71, 73-76, 80-82, 84-88, 90-94.) Plaintiffs seek to recover money that defendants allegedly acquired "by submitting, and causing to be submitted, thousands of fraudulent bills relating to medically unnecessary acupuncture services that were purportedly rendered to victims of automobile accidents in . . . New York." (Amended Complaint, dated Sept. 10, 2007 ("Compl."), ¶ 1.) Furthermore, they seek a declaratory judgment holding that they have no legal obligation to pay any claims submitted by Eastern or MAS because:

> (i)      [Eastern and MAS] were fraudulently incorporated, and therefore, ineligible to seek or recover no-fault benefits;
>
> (ii)      Eastern . . . was not authorized by the State of New York to provide and charge for acupuncture services;
>
> (iii)      Robert Hard, M.D., and Elvin Ruiz, M.D., the purported owners of Eastern . . . were not certified to practice acupuncture prior to December 13, 2001 and November 28, 2001, respectively, and therefore could not lawfully own, control or practice through an acupuncture professional corporation; and
>
> (iv)      [Eastern and MAS] engaged in unlawful fee splitting with non-medical professionals.

(Compl. ¶ 2.)

After a series of lengthy discovery battles, the parties have resolved the bulk of their disputes, save one: whether plaintiffs must produce "the SIU file compiled by [plaintiffs] on each party to the lawsuit." (Eastern Medical, Medical Acupuncture Services and Affiliated Defendants' Memorandum of Law in Support of Motion to Compel Discovery, dated Oct. 31, 2007 ("Defs. Mem."), 8. <u>See generally</u> Order, dated May 16, 2008; Order, dated Feb. 29, 2008;

Defs. Mem. 4-7, 15-19.)  Plaintiffs argue that the SIU files are privileged and not relevant.  (See Response in Opposition to Defendants' [sic] Eastern Medical, PC, Medical Acupuncture Services, PC, Robert Hard, Elven Ruiz, Lai Fan Xue, Cheng He Su, Li Li Zhang, Qun Liu, Run Sheng Xie and Yan Yan Yu Motion to Compel Discovery, dated Dec. 21, 2007 ("Pls. Opp'n"), 14, 16.)

STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Courts should construe the scope of discovery "broadly," see Spina v. Our Lady of Mercy Med. Ctr., No. 97 Civ. 4661, 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)), but not to an extent that permits parties to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  Id. (quotation marks & citation omitted).

With respect to the discovery of privileged information, the Second Circuit has held that claims of privilege "must be strictly construed and accepted 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'"  Cox v. Miller, 296 F.3d 89, 107 (2d Cir. 2002) (quoting Trammel v. United States, 445 U.S. 40, 50 (1980)) (quotation marks & citation omitted).  "The party asserting the privilege and resisting discovery, [sic] has the burden of establishing the existence of the privilege in all respects."  Allen v. W. Point-Pepperell, Inc., 848 F. Supp. 423, 426-27 (S.D.N.Y. 1994); accord Onebeacon Ins. Co. v.

<u>Forman Int'l, Ltd.</u>, No. 04 Civ. 2271, 2006 WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006).  The

Federal Rules of Evidence state that

> the privilege of a . . . person . . . shall be governed by the principles
> of the common law as they may be interpreted by the courts of the
> United States in the light of reason and experience.  However, in
> civil actions and proceedings, with respect to an element of a claim
> or defense as to which State law supplies the rule of decision, the
> privilege of a . . . person . . . shall be determined in accordance
> with State law.

Fed. R. Evid. 501; <u>see</u> <u>Myers v. Phillips</u>, No. 04 CV 4365, 2007 WL 2276388, at *1 (E.D.N.Y.

Aug. 7, 2007); <u>Komlosi v N.Y. State Office of Mental Retardation & Dev. Disabilities</u>, No. 88

Civ. 1792, 1992 WL 77544, at *2 (S.D.N.Y. Apr. 3, 1992); <u>cf.</u> <u>King v. Conde</u>, 121 F.R.D. 180,

187 (E.D.N.Y. 1988).  More simply, federal courts generally will apply federal privilege rules in

matters arising under federal law and state privilege rules in matters arising under state law.

 Nevertheless, federal courts recognize that state privilege rules "may illustrate

important privacy interests, and 'a strong policy of comity between state and federal

sovereignties impels federal courts to recognize state privileges where this can be accomplished

at no substantial cost to federal substantive and procedural policy.'"  <u>Komlosi</u>, 1992 WL 77544,

at *2 (quoting <u>King</u>, 121 F.R.D. at 187) (quotation marks & citation omitted); <u>accord</u> <u>Myers</u>,

2007 WL 2276388, at *2.  Therefore, instead of simply applying a state privilege law to a federal

claim, a court should "balance the interests favoring and opposing" invocation of the privilege.

<u>King</u>, 121 F.R.D. at 187.  Factors to consider include the privileged material's relevancy and

importance to a party's case and the importance of full disclosure to the public interest.  <u>See</u> <u>id.</u>

at 194-95.

**DISCUSSION**

Under New York law, private insurers must "file . . . a plan for the detection, investigation and prevention of fraudulent insurance activities in [New York] and those fraudulent insurance activities affecting policies issued or issued for delivery in [New York]." N.Y. Ins. Law § 409(a). This plan must include provisions for establishing a "full-time special investigations unit [SIU] . . . . Such unit shall be . . . responsible for investigating information on or cases of suspected fraudulent activity and for effectively implementing fraud prevention and reduction activities pursuant to the plan." § 409(b)(1). Furthermore, "[a]ny plan, the information contained therein, or correspondence related thereto, or any other information furnished pursuant to this section shall be deemed to be a confidential communication and shall not . . . be subject to a subpoena except by a court order" ("SIU Immunity"). § 409(e); see King, 121 F.R.D. at 192.

**A. Defendants' Contentions**

In the present case, defendants seek the SIU files that plaintiffs compiled on each defendant. Defendants assert that by bringing RICO and New York state law fraud claims against them, plaintiffs have put their own reasonable reliance on defendants' alleged fraud at issue, as plaintiffs must demonstrate reasonable reliance to prevail on these claims. (See Defs. Mem. 8, 10-11.) First, defendants argue that the confidentiality clauses of § 409 do not apply to the present dispute because the related document demands "do not request [plaintiffs'] fraud detection plan . . . , the information within the plan . . . , correspondence related to the plan, or other information furnished to the [New York] Insurance Department about [plaintiffs'] fraud detection plan." (Defs. Mem. 18.) In the alternative, defendants contend that they should be

produced pursuant to court order, as provided in the last sentence of § 409(e), even if these documents were covered by § 409(e). According to defendants, the contents of plaintiffs' SIU files "bear on the reasonableness of [plaintiffs'] actions in paying the claims that form the basis of this suit" (see Defs. Mem. 8), and plaintiffs have waived any privilege that may attach to the SIU files because defendants must have access to the file to ensure "fairness" in the litigation. (See Eastern Medical, Medical Acupuncture Services and Affiliated Defendants' Reply Memorandum of Law in Support of Motion to Compel Discovery, dated Jan. 10, 2008 ("Defs. Reply"), 15.)

### B. Plaintiffs' Contentions

#### 1. Relevance

Plaintiffs contest defendants' characterization of the SIU files as relevant for discovery. First, plaintiffs state that they did not maintain SIU files for individual claims in this case "other than those files where examinations under oath of the patients were conducted and those transcripts have already been produced. There is simply one investigative file relevant to the claims asserted in this case." (Pls. Opp'n 16.) More importantly, plaintiffs note that they paid Eastern over $1,778,000 of the $1,900,000 in claims that Eastern submitted before May 27, 2003, the date when plaintiffs' investigation into the alleged fraud began. (See Pls. Opp'n 9, 16.) Likewise, plaintiffs paid 394 of the 412 contested claims prior to commencing their investigation. (See Pls. Opp'n 9, 16.) Once plaintiffs began investigating Eastern's suspected fraudulent conduct, they halted payments. (See Pls. Opp'n 10.) Accordingly, plaintiffs insist that "anything in the SIU file cannot be relevant to [plaintiffs'] reliance because virtually all of the claims were voluntarily paid prior to the time when the investigation began." (Pls. Opp'n

16.)  Plaintiffs made no voluntary payments on Eastern's claims after starting the investigation.

(See Pls. Opp'n 11, 16-17.)  Finally, plaintiffs assert that they are "entitled to rely on the facially

valid documents" that defendants submitted pursuant to New York Insurance Law §403(e) (Pls.

Opp'n 17), which mandates that

> [a]ll applications for automobile insurance and all claim forms
> shall contain a notice . . . that clearly states in substance the
> following:
>
> "Any person who knowingly makes or knowingly assists, abets,
> solicits or conspires with another to make a false report of the
> theft, destruction, damage or conversion of any motor vehicle to a
> law enforcement agency, the department of motor vehicles or an
> insurance company, commits a fraudulent insurance act, which is a
> crime, and shall also be subject to a civil penalty not to exceed five
> thousand dollars and the value of the subject motor vehicle or
> stated claim for each violation."

N.Y. Ins. Law § 403(e).  According to plaintiffs, defendants cannot demand production of SIU

files for reasons of reliance in the face of the clear directive of this statute, since the statute

narrows the scope of the reliance inquiry to defendants' submissions alone.  (See Pls. Opp'n 17-

18.)

### 2. SIU Immunity

Plaintiffs further contend that the express language in § 409 of New York's

Insurance Code and the State's strong interest in preventing insurance fraud shield plaintiffs

from producing SIU files.  (See Pls. Opp'n 28-29.)  Specifically, they note that "[i]f SIU file

materials were subject to discovery, this would allow the crime community access to the very

processes insurance agencies were using to detect their fraudulent practices. . . . The very

existence of Section 409 shows that New York has a strong public policy favoring the

confidentiality of materials related to fraud investigations."  (Pls. Opp'n 29.)  In contrast,

plaintiffs argue, the only federal interest at stake in this determination is allowing broad discovery.  (See Pls. Opp'n 29.)  Given that plaintiffs already have provided defendants with every 'Examination Under Oath' ("EUO") taken in this investigation, the no-fault claim file with documents related to the allegedly fraudulent services at issue, and portions of plaintiffs' claims and underwriting manuals, New York's interest in combating fraud vastly outweighs any federal interest.  (See Pls. Opp'n 29.)  If the court finds that SIU Immunity does not apply to the SIU files, plaintiffs assert in the alternative that the files are protected by attorney-client privilege and work-product privilege.  (See Pls. Opp'n 18.)

C. **Analysis**

The court agrees with defendants that the SIU files are relevant, as they are reasonably calculated to lead to the discovery of admissible evidence relating to the parties' claims and defenses in this litigation.  See Fed. R. Civ. P. 26(b)(1).  The standard for determining relevance is generous, and these files qualify.  See Fed. R. Civ. P. 26(a).  Whether they are admissible is a question for another day.

With respect to statutory immunity, plaintiffs contend that the express language of § 409(e) and the policy underlying it shield the SIU files from discovery.  Plaintiffs read § 409(e) too broadly.  Section 409 requires insurers to develop fraud prevention plans and SIUs, and to file copies of those plans with the Superintendent of Insurance.  Subsection (e) expressly deems "[a]ny [fraud prevention] plan, the information contained therein, or correspondence related thereto, or any other information furnished pursuant to this section" to be confidential.  § 409(e).  Plaintiffs contend, without explanation, that these files constitute "other information furnished pursuant to this section" and are thus confidential.  (See Pls. Opp'n 30.)  However, when read in

its statutory context, "furnished" clearly means transmitted to the Superintendent of Insurance pursuant to § 409 and refers to the requirement that insurers develop, file, and seek the Superintendent's approval of a fraud prevention plan and related materials.  See generally § 409. Plaintiffs do not contend that they "furnished" copies of the SIU files to the Superintendent of Insurance or that § 409 requires them to do so.  Nothing in subsection (e) expressly extends the protection of confidentiality either to internal SIU investigation files or to documents that were never submitted to the Superintendent of Insurance.[2]  If the legislature had intended to exempt SIU files from discovery, it could easily have done so.

However, assuming *arguendo* that these files were protected, they could still be released pursuant to court order.  See § 409(e).  The court must weigh plaintiffs and the public's interest in keeping these materials confidential with defendants and the public's interest in full disclosure.  See King, 121 F.R.D. at 188 ("The federal courts must balance the interests favoring and disfavoring disclosure in order to resolve discovery disputes of this kind.")  New York historically has faced great difficulties combating no-fault insurance fraud, which often consisted of "purported victims [being] steered to corrupt medical clinics, called 'medical mills,' where they feigned aches, pains and soft tissue injuries.  The medical mills would then generate stacks

_____

[2] Plaintiffs rely on CPT Med. Serv., P.C. v. Allstate Ins. Co., 230 N.Y. L. J. 20 (col 3) (July 1, 2003) (Dist. Ct. Nass. Cty. 2002).  In this case, a no-fault collections action in which the carrier objected to discovery of its claims files and claims manual, the court ruled without discussion that any information relating to suspected fraudulent insurance transactions of the medical provider need not be produced, citing New York Insurance Law sections 406 and 409, and reciting the phrase "Special Investigation Unit 'SIU' immunity."  Id.  The decision does not explain the basis for its finding.  Neither party has cited other case law on this issue, and the court's independent research has found none.  To the extend CPT holds that internal SIU investigation files that have not been furnished to the Superintendent of Insurance are immune from production, this court respectfully disagrees for the reasons explained above.

of medical bills for each [patient], detailing treatments and tests that were unnecessary or never performed." Med. Soc'y of the State of N.Y. v. Serio, 800 N.E.2d 728, 732 (N.Y. 2003). See generally Borough President's Task Force on Equity in State & Local Policy, Putting the Brakes on Out of Control Rates: An Examination of Brooklyn's Record High Automobile Insurance Rates & How They Can Be Reduced (2004). According to some estimates, no-fault insurance fraud increased the annual insurance premium for the average New York motorist by $100. See Serio, 800 N.E.2d at 731. The statutory scheme governing no-fault insurance in New York, which explicitly aims to protect the means by which insurance companies detect fraudulent behavior, see, e.g., §§ 403, 409, and case law from the Court of Appeals, see, e.g., Serio, 800 N.E.2d 728, leave no doubt that exposing such information to public view would conflict with a strong New York policy goal. See King, 121 F.R.D. at 192 ("Disclosure of police procedure guides to the general public could compromise the effectiveness of law enforcement by revealing police tactics to sinister elements. Protective orders limiting disclosure to plaintiffs' attorney may be especially apt remedies for this problem.").

However, substantial considerations also weigh in defendants' favor. To prevail on a civil RICO claim, plaintiffs must demonstrate that defendants' alleged violation was the "proximate cause" of plaintiffs' injury. Bank of China v. NMB, LLC, 359 F.3d 171, 176 (2d Cir. 2004) (quotation marks omitted). Further, "where mail fraud is the predicate act for a civil RICO claim," as in this case, "the proximate cause element . . . requires the plaintiff to show 'reasonable reliance.'" Id. Because reasonable reliance thus lies at the heart of plaintiffs' RICO claims against defendants, defendants must have access to information within SIU files that may demonstrate the reasonableness, or lack thereof, of plaintiffs' behavior. Simple assertions by

plaintiffs that the vast majority of claims, in both numerical and monetary terms, plaintiffs paid

out to defendants occurred prior to plaintiffs' investigation do not mitigate the importance of this

information to those claims that plaintiffs processed subsequent to the investigation's

commencement

    After weighing these competing tensions, the court orders plaintiffs to produce for

defendants the contents of the SIU files relating to this case, except for any information that

reveals 1) the structure or methodology of plaintiffs' fraud detection plan created pursuant to

§ 409 and 2) materials protected by attorney-client and work-product privileges.  The court

stresses that "[i]nvestigatory reports and materials are not protected by the attorney-client

privilege or the work-product doctrine merely because they are provided to, or prepared by,

counsel." Onebeacon Ins. Co., 2006 WL 3771010, at *5; see Upjohn Co. v. United States, 449

U.S. 383, 396 (1981); see also Trudeau v. N.Y. State Consumer Prot. Bd., 237 F.R.D. 325, 336

(N.D.N.Y. 2006) ("The attorney-client privilege is not given broad, unfettered latitude to every

communication with a lawyer, but is to be narrowly construed to meet this narrowest of

missions.").  Furthermore, the scope of attorney-client privilege "extends *only* to

communications and *not* to facts." Allen, 848 F. Supp. at 427 (emphasis added).  Plaintiffs "may

not refuse to disclose any relevant fact within [SIU files] merely because [plaintiffs] incorporated

a statement of such fact into [their] communication to [their] attorney." Id.  Similarly, the work

product doctrine exists only "to protect attorneys' mental impressions, opinions, and/or legal

theories *concerning litigation*," and plaintiffs may not broaden its scope to circumvent their

discovery obligations. Trudeau, 237 F.R.D. at 336 (citing Horn & Hardart Co. v. Pillsbury Co.,

888 F.2d 8, 12 (2d Cir. 1989)) (emphasis added). In addition to producing the relevant materials, plaintiffs shall also provide defendants with a privilege log in accordance with Local Civil Rule 26.2 for the SIU documents that plaintiffs do not produce.

<h3 align="center">CONCLUSION</h3>

For the reasons stated above, defendants' motion to compel discovery is granted in part and denied in part. Plaintiffs shall produce within fifteen business days of this order the contents of their SIU files relating to the present case, except for information that divulges plaintiffs' fraud detection plan and materials protected by attorney-client and work-product privilege. Plaintiffs shall also provide defendants by the same date a privilege log in accordance with Local Civil Rule 26.2 for the SIU documents not produced.

SO ORDERED.

Dated:  Brooklyn, New York
         August 5, 2008

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge